## STATE OF CONNECTICUT *v.* ANDRE RHODES
### (SC 15677)

Callahan, C. J., and Berdon, Norcott, Katz and Palmer, Js.

Argued October 28, 1998—officially released March 16, 1999

*William S. Palmieri*, for the appellant (defendant).

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom, on the brief, was *Mary M. Galvin*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The sole issue raised by this appeal[1] is whether the defendant, Andre Rhodes, is entitled to a new trial because a member of the jury that convicted him of murder and felony murder[2] had engaged in improper conversations about the case with a friend during the trial. We answer the question in the negative and, consequently, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of July 29, 1995, the defendant and an unidentified male companion went to Kenneth Vitale's apartment to purchase one-quarter pound of marijuana from Vitale's friend, Michael Day, the victim. Vitale's girlfriend, Megan Schwatlow, and Carolyn Huhn were present at the apartment. When the victim arrived with the marijuana, Vitale, the victim, the defendant and the unidentified male convened in the bedroom to

---

[1] The defendant appealed from the judgment of the trial court directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[2] The defendant also was charged with two counts of carrying a pistol without a permit in violation of General Statutes § 29-35. The jury, however, was unable to reach a verdict on those two counts and, consequently, the trial court declared a mistrial as to those counts.

weigh the drugs. Thereafter, it was determined that the marijuana weighed five grams less than expected. The victim then attempted to place a telephone call to the person from whom he had obtained the marijuana. While the victim was on the telephone, Vitale departed from the bedroom and, as he was proceeding toward the living room, he heard the sound of a gunshot. Seconds later, the unidentified male left the bedroom and proceeded into the living room carrying a brown paper bag containing the marijuana. The defendant followed immediately thereafter, brandishing a pistol and pointing it in the direction of Vitale, Schwatlow and Huhn. The defendant and the unidentified male fled the apartment. Vitale then went into the bedroom and observed the victim lying on the bed, semiconscious, with the telephone receiver in his hand. According to the medical examiner, the victim had been shot twice in the chest from a distance of less than two feet. The victim died from injuries sustained as a result of the gunshot wounds.

Vitale reported the incident to the police and provided them with the defendant's name and address. The police located the defendant two days later at the apartment of a friend, Leon Telford. The police conducted a search of Telford's home and found a red, nylon zippered bag, containing a semiautomatic pistol, two bags of marijuana and a bag of hashish. Ballistics testing definitively matched the pistol to two spent bullets that had been found near the victim's body and the defendant's fingerprint was found on two of the bags containing the drugs. In addition, Vitale and Schwatlow made positive out-of-court and in-court identifications of the defendant. Both Vitale and Schwatlow described the defendant's pistol to the police and later identified it at trial. Huhn also made a positive in-court identification of the defendant.

After six days of deliberations, the jury found the defendant guilty of murder in violation of General Statutes §§ 53a-54a (a)[3] and 53a-8,[4] and felony murder in violation of General Statutes § 53a-54c.[5] The defendant filed timely motions for a judgment of acquittal and for a new trial. Thereafter, the defendant, upon learning that a juror had discussed the case with a third party during the trial, filed an amended motion for a new trial on the ground of juror misconduct.

The trial court conducted an evidentiary hearing on the defendant's claim of juror misconduct.[6] The evidence adduced at that hearing revealed that, during the pendency of the trial, one juror, Amy Setkoski, had had several telephone conversations in which she discussed the case with her boyfriend, Anthony Macaluso. Each of these conversations was tape-recorded as Macaluso was incarcerated at the time they occurred.[7] At the

---

[3] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[4] General Statutes § 53a-8 provides in relevant part: "Criminal liability for acts of another. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

[5] General Statutes § 53a-54c provides in relevant part: "Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[6] At the hearing, both parties were given a full and fair opportunity to present evidence relevant to the defendant's claim of juror misconduct. The defendant makes no claim of impropriety regarding the manner in which the trial court conducted the hearing.

[7] Regulations of the department of correction permit the monitoring and recording of nonprivileged inmate telephone conversations upon notice

hearing, the defendant introduced into evidence seven tape-recorded conversations between Setkoski and Macaluso.[8] The relevant portion of each of those conversations is summarized as follows.[9]

The first conversation between Setkoski and Macaluso regarding the trial took place on the evening of the first day of the trial, October 23, 1996. Setkoski told Macaluso that she had been selected as a juror for the defendant's trial. Macaluso expressed frustration about not being able to discuss the case with Setkoski during the trial, stating that "our phone conversations [are] recorded and if they heard you talking about the details then . . . you would get in trouble." Macaluso also expressed his feelings about the criminal justice system, which he characterized as a sham that operates on the presumption that criminal defendants are "guilty until . . . proven innocent."

During two conversations with Macaluso on October 26, 1996, Setkoski expressed concern about not getting paid while serving as a juror. Macaluso replied: "I'll bet you the judge's check doesn't wait a month."

On October 27, 1996, Macaluso told Setkoski that it was possible that the state and the defendant would reach a plea agreement before the jury began its deliberations on the case. Setkoski was surprised to learn that the parties could enter into a plea bargain after the trial had commenced.

to the inmate. Regs., Conn. State Agencies §§ 18-81-29 and 18-81-44; see *Washington* v. *Meachum*, 238 Conn. 692, 694–99, 680 A.2d 262 (1996).

[8] Setkoski and Macaluso had four other telephone conversations during the trial that were recorded. Only the seven conversations relevant to the defendant's claim, however, were introduced into evidence.

[9] In addition, Setkoski and Macaluso testified at the hearing regarding their conversations about the trial. Although they both recalled having fewer discussions about the case than the tapes establish, their testimony otherwise was generally consistent with the conversations contained on the tapes.

In a conversation on the evening of October 31, 1996, Setkoski told Macaluso that jury deliberations had begun that day. Setkoski also stated that the other jurors disagreed with her view of the case. Macaluso told Setkoski that "it sounds like a hung jury to me because I know you, you're definitely not going to give in." Macaluso also suggested that Setkoski rent and view a movie entitled "Jury Duty," a comedy about a holdout juror in a case that ends in a hung jury.

On November 5, 1996, as jury deliberations continued, Setkoski told Macaluso that she still disagreed with the other jurors, prompting Macaluso to comment on Setkoski's stubbornness. He then advised Setkoski not to hold fast to her position out of spite or simply to prove that she could not be swayed. He stated: "You know, just try to be open minded. That's all I can tell you about it." Setkoski then suggested that the other jurors were being mean to her, to which Macaluso responded: "Good thing I'm not there. I'd just put them in their place."

The final conversation between Setkoski and Macaluso regarding the trial occurred on the evening of November 6, 1996, after the jury had concluded its fourth day of deliberations. Macaluso indicated to Setkoski that, even though the defendant had shot the victim twice,[10] the defendant nevertheless might not have intended to kill the victim because the defendant could have fired the two shots "out of . . . sheer fright or shock, anything . . . ." Setkoski responded: "That's what I thought."[11]

The foreperson of the jury, Josephine Gaida, testified at the hearing. Gaida indicated that Setkoski's position

[10] At the trial, the state had maintained that the fact that the victim had been shot twice supported its claim that the shooting was intentional.

[11] At the hearing, Setkoski acknowledged that she had asked Macaluso about the meaning of intent. She also indicated that her concerns regarding

during deliberations had been favorable to the defendant until November 8, 1996, when she joined the other jurors in voting to convict the defendant of murder and felony murder. Gaida further testified that, to her knowledge, Setkoski had not introduced any outside information into the jury room.

At the conclusion of the hearing, the defendant claimed that a presumption of prejudice arises from improper juror contact and that the state had failed to rebut that presumption in this case. The state, on the other hand, claimed that where, as here, the trial court is in no way responsible for the impropriety, the burden rests with the defendant to prove that actual prejudice resulted from the juror misconduct. The state further maintained that the evidence adduced at the hearing failed to establish that the defendant had been prejudiced in any way by Setkoski's improper conversations with Macaluso.

The trial court denied the defendant's motion for a new trial. In a thorough memorandum of decision, the trial court concluded that, irrespective of which party bore the burden of proof on the issue of prejudice, and by whatever standard of proof, the defendant could not prevail on his claim. In so concluding, the court stated as follows: "The court need not decide whether the position of the state or that of the defendant is the correct one since the court finds that, not only has there been no showing of prejudice by the defendant, but any presumption of prejudice has been rebutted [by the state] beyond a reasonable doubt. Therefore, regardless of where the burden of proof is placed, or the standard of proof to be utilized, the defendant is not entitled to a new trial on the basis of juror misconduct." The trial court based its conclusion on the fact that Macaluso's

the sufficiency of the state's evidence on intent had caused her to hold out for an acquittal for several days.

communications with Setkoski "were, if anything, favorable to the defendant" and resulted in Setkoski holding out for an acquittal longer than she otherwise might have. The trial court also observed that Setkoski had voted to convict the defendant only after the court had reinstructed the jury on intent on November 6 and again on November 7.

On appeal, the defendant's sole contention is that he is entitled to a new trial in light of Setkoski's improper conversations with Macaluso concerning the case. We reject the defendant's claim.

"Jury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8,[12] and by the sixth amendment to the United States constitution.[13] . . . [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court." (Internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 330, 715 A.2d 1 (1998); accord *State* v. *Brown*, 235 Conn. 502, 522, 668 A.2d 1288 (1995). "It has long been the law of this state that jurors shall not converse with any person [who is] not a member of the

[12] The Connecticut constitution, article first, § 8, as amended by article seventeen of the amendments, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. . . ."

[13] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

jury, regarding the cause under consideration . . . ." *Aillon* v. *State*, 168 Conn. 541, 545, 363 A.2d 49 (1975); accord *State* v. *McPhail*, 213 Conn. 161, 173, 567 A.2d 812 (1989); *State* v. *McCall*, 187 Conn. 73, 81, 444 A.2d 896 (1982). "[These] rules are of vital importance to assure that the jury will decide the case free from external influences that might interfere with the exercise of deliberate and unbiased judgment." *Aillon* v. *State*, 173 Conn. 334, 337, 377 A.2d 1087 (1977).

"It is well established, however, that not every incident of juror misconduct requires a new trial." *State* v. *Newsome*, 238 Conn. 588, 627, 682 A.2d 972 (1996). "[D]ue process seeks to assure a defendant a fair trial, not a perfect one. . . . [T]he constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." (Internal quotation marks omitted.) *State* v. *Tomasko*, 242 Conn. 505, 513, 700 A.2d 28 (1997). "The question is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial. . . . The defendant has been prejudiced if the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror. . . . We have previously held that, in cases where the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. . . . Where, however, the trial court was in no way responsible for the juror misconduct . . . we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Newsome*, supra, 628.

Finally, "[a]ppellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . [W]e have . . . accordingly confined our role to a determination of whether there has been an abuse of discretion. . . . Claims of juror misconduct fall within this rule of limited review." (Citation omitted; internal quotation marks omitted.) *State* v. *Small*, 242 Conn. 93, 113, 700 A.2d 617 (1997); see also *State* v. *Brown*, supra, 235 Conn. 523–24.

The defendant contends, as a preliminary matter, that we should reconsider our precedent that places the burden on the defendant to show that he or she was actually prejudiced by the juror misconduct when the trial court is in no way responsible for the impropriety. E.g., *State* v. *Tomasko*, supra, 242 Conn. 512–13; *State* v. *Small*, supra, 242 Conn. 113; *State* v. *Newsome*, supra, 238 Conn. 628; *Asherman* v. *State*, 202 Conn. 429, 442, 521 A.2d 578 (1987). Specifically, the defendant claims that requiring him to prove prejudice is inconsistent with the dictates of the due process clause of the fourteenth amendment to the United States constitution,[14] which, the defendant asserts, requires the state to establish the harmlessness of any juror misconduct beyond a reasonable doubt.[15] In support of his claim, the defendant relies primarily on *Remmer* v. *United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954), in which the United States Supreme Court observed: "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made

---

[14] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[15] The defendant makes no claim under the state constitution.

in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." Id., 229; see also *State* v. *Rodriguez*, 210 Conn. 315, 326, 554 A.2d 1080 (1989) ("[w]here an accused makes a plausible claim that his constitutional right to a fair trial may be violated because the jury is not impartial, the burden is upon the state to rebut the presumption of prejudice that denies a fair trial"). The state, on the other hand, claims that, more recently, the United States Supreme Court has indicated that *Remmer* stands only for the proposition that a defendant is entitled to a hearing at which the defendant bears the burden of proving actual prejudice. See *Smith* v. *Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ("[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which *the defendant has the opportunity to prove actual bias*" [emphasis added]).[16]

---

[16] There is a split of authority among the United States Circuit Courts of Appeals as to whether a presumption of prejudice arises when a juror has improper communications about the case with a third party. Compare *United States* v. *Console*, 13 F.3d 641, 665–66 (3d Cir. 1993), cert. denied sub nom. *Curcio* v. *United States*, 511 U.S. 1076, 114 S. Ct. 1660, 128 L. Ed. 2d 377 (1994), and cert. denied sub nom. *Markoff* v. *United States*, 513 U.S. 812, 115 S. Ct. 64, 130 L. Ed. 2d 21 (1994) (presumption of prejudice arises when juror has direct communication with third party during deliberations) and *United States* v. *Wiley*, 846 F.2d 150, 157 (2d Cir. 1988) ("[a] presumption of prejudice arises when a juror is exposed to extra-record evidence and the government is required to rebut that presumption") with *United States* v. *Pennell*, 737 F.2d 521, 532 (6th Cir. 1984), cert. denied, 469 U.S. 1158, 105 S. Ct. 906, 83 L. Ed. 2d 921 (1985) ("[T]he burden of proof [in cases involving unauthorized juror contact] rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed."). We note, moreover, that the United States Supreme Court recently has indicated that the critical consideration in resolving a claim of improper juror contact is not whether prejudice may be assumed from such contact, but, rather, whether, under the specific facts

In this case, we see no reason to revisit our prior case law regarding the burden or standard of proof in juror misconduct cases because the defendant cannot prevail, even under the rule he urges us to adopt. Even if it is assumed, arguendo, that the state bears the burden of proving the harmlessness of Setkoski's improper contact with Macaluso beyond a reasonable doubt, the evidence supports the trial court's finding that the state satisfied that burden.

The trial court reasonably concluded that Macaluso's conversations with Setkoski regarding the trial were not prejudicial to the defendant. Indeed, as the trial court expressly found, the improper conversations, if anything, were favorable to the defendant.[17] For exam-

---

of the case, any such impropriety actually affected the verdict. *United States v. Olano*, 507 U.S. 725, 739, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) ("There may be cases where [a jury] intrusion should be presumed prejudicial . . . but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations, and thereby its verdict?" [Citation omitted.]). Subsequent to the court's decision in *Olano*, several federal Circuit Courts of Appeals have refused to presume prejudice from an improper juror contact, opting instead for an approach under which the burden of establishing harmlessness rests with the government only if the trial court first determines that, under all of the circumstances, prejudice to the defendant is reasonably likely. E.g., *United States v. Sylvester*, 143 F.3d 923, 933–34 (5th Cir. 1998) (trial court must determine whether likelihood of prejudice arising from improper juror communication justifies assigning government burden of establishing harmlessness); *United States v. Williams-Davis*, 90 F.3d 490, 497 (D.C. Cir. 1996), cert. denied, 519 U.S. 1128, 117 S. Ct. 986, 136 L. Ed. 2d 867 (1997) (same).

[17] We note that Macaluso initially testified that in one of the conversations he had had with Setkoski during the trial, he told her to "screw that black piece of shit," referring to the defendant. Macaluso recanted this testimony when he learned that all of his conversations with Setkoski during the trial had been tape-recorded. According to Macaluso, he had agreed to testify falsely about having made the racially disparaging comment to Setkoski at the urging of the defendant while the two men were being transported together from jail to court for the hearing on the defendant's motion for a new trial. Macaluso further testified that the defendant had told him that "the best way to get a mistrial was to say that it was something racial involved." Consistent with Macaluso's recantation, the trial court expressly found that Macaluso had never made the derogatory comment about the defendant to Setkoski.

ple, Macaluso's comment that, in his view, the justice system considers a person "guilty until . . . proven innocent," and his statement that the defendant did not necessarily intend to kill the victim simply because the defendant had fired two shots at the victim, provided Setkoski with reasons to view the state's case with suspicion. Macaluso's other trial-related comments to Setkoski also could not reasonably be construed as harmful or otherwise unfavorable to the defendant.

As the trial court further noted, "this is not a case where a piece of evidence or fact which was not admitted at trial was learned by or communicated to a juror or jurors," a circumstance that may give rise to a heightened risk of prejudice to the defendant. See, e.g., *United States* v. *Cheyenne*, 855 F.2d 566, 567–68 (8th Cir. 1988). Moreover, the court properly found, on the basis of the jury foreperson's uncontroverted testimony, that there was no indication that Setkoski had shared Macaluso's comments with any other member of the jury.

The trial court also reasonably determined that there was no connection between the improper conversations and Setkoski's eventual vote to convict the defendant of murder and felony murder. On the contrary, the evidence established, and the court found, that Setkoski had held out for an acquittal during the course of her conversations with Macaluso. In fact, it was not until two days after Setkoski's last conversation about the case with Macaluso that she joined the other jurors in voting for conviction. It is noteworthy, moreover, that on each of the last two full days of jury deliberations, the trial court reinstructed the jury on the element of intent, an issue that Setkoski testified had caused her to question the sufficiency of the state's case. See footnote 11 of this opinion. It therefore was reasonable for the trial court to conclude that Setkoski had reconsidered her position during the final two full days of jury deliberations not because of anything Macaluso had

said to her about the case, but, rather, in light of the court's supplemental instructions on intent.

Thus, we are satisfied that the trial court did not abuse its discretion in concluding that the defendant had suffered no prejudice as a result of Setkoski's improper contact with Macaluso and that the state had rebutted any presumption of prejudice arising from such contact beyond a reasonable doubt. Accordingly, we reject the defendant's claim that he is entitled to a new trial on the ground of juror misconduct.

The judgment is affirmed.

In this opinion the other justices concurred.