[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM of DECISION
CT Page 13703
By his second amended petition, dated April 17, 2001, petitioner seeks a writ of habeas corpus. He alleges that he is in the custody of respondent serving a sixty year sentence imposed after a conviction of murder in violation of C.G.S. § 53a-54a and felony murder in violation of C.G.S. § 53a-54c. Respondent has admitted such allegations and it is found that petitioner is in the custody of respondent serving such sentence.
In the second count of the petition now before the court petitioner claims that his incarceration is illegal in that he was denied his right to the effective assistance of counsel in violation of the United States Constitution, Amendment IV and the Connecticut Constitution, Article I, § 8, because his counsel failed to properly and adequately prepare petitioner's case.
For reasons hereinafter stated the petition is denied.
The evidence indicates that during the preliminary stages of the criminal prosecution of petitioner, Attorney Vito Castignoli was appointed to represent petitioner replacing another lawyer because of a conflict. Attorney Castignoli represented petitioner throughout the preliminary proceedings and through a trial by jury which resulted in petitioner's conviction and sentencing. State v. Rhodes, 248 Conn. 39
(1999). It is petitioner's claim that Attorney Castignoli representation was constitutionally deficient and that this resulted in his present incarceration.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." . . . This right arises under the sixth and fourteenth amendments to the United States constitution" Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995). (Citations omitted.)
The general standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been CT Page 13704 different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
On the appeal of petitioner's conviction, the Supreme Court stated that the jury reasonably could have found the following facts. "On the evening of July 29, 1995, the defendant and an unidentified male companion went to Kenneth Vitale's apartment to purchase one-quarter pound of marijuana from Vitale's friend, Michael Day, the victim. Vitale's girlfriend, Megan Schwatlow, and Carolyn Huhn were present at the apartment. When the victim arrived with the marijuana, Vitale, the victim, the defendant and the unidentified male convened in the bedroom to weigh the drugs. Thereafter, it was determined that the marijuana weighed five grams less than expected. The victim then attempted to place a telephone call to the person from whom he had obtained the marijuana. While the victim was on the telephone, Vitale departed from the bedroom and, as he was proceeding toward the living room, he heard the sound of a gunshot. Seconds later, the unidentified male left the bedroom and proceeded into the living room carrying a brown paper bag containing the marijuana. The defendant followed immediately thereafter, brandishing a pistol and pointing it in the direction of Vitale, Schwatlow and Huhn. The defendant and the unidentified male fled the apartment. Vitale then went into the bedroom and observed the victim lying on the bed, semiconscious, with the telephone receiver in his hand. According to the medical examiner, the victim had been shot twice in the chest from a distance of less than two feet. The victim died from injuries sustained as a result of the gunshot wounds.
Vitale reported the incident to the police and provided them with the defendant's name and address. The police located the defendant two days later at the apartment of a friend, Leon Telford. The police conducted a search of Telford's "home and found a red, nylon zippered bag, containing a semiautomatic pistol, two bags of marijuana and a bag of hashish. CT Page 13705 Ballistics testing definitively matched the pistol to two spent bullets that had been found near the victim's body and the defendant's fingerprint was found on two of the bags containing the drugs. In addition, Vitale and Schwatlow made positive out-of-court and in-court identifications of the defendant. Both Vitale and Schwatlow described the defendant's pistol to the police and later identified it at trial. Huhn also made a positive in-court identified of the defendant." State v.Rhodes, supra 248 Conn. 40-41.
Petitioner has denied that he killed Michael Day. The murder occurred in West Haven. It is petitioner's claim that he was in New Haven going between bars at the time of the killing. His defense was alibi.
It is petitioner's position that Attorney Castignoli was deficient in that he failed to adequately investigate the alibi defense and call witnesses in support of this defense.
Attorney Castignoli testified that in preparation for trial he reviewed the testimony of the probable cause hearing, met with petitioner, reviewed the state's file, police reports and statements. He also hired Albert Gagne as an investigator. He instructed Mr. Gagne to interview witnesses and obtain statements from all potential alibi witnesses disclosed to him by petitioner. Flyers requesting anyone with information that would help the defense to contact Gagne were circulated in appropriate areas. Two potential alibi witnesses were identified, Peter Nugent, a bartender, and The manager of a bar. The attorney met with Nugent and visited the bars petitioner claimed he was in at about the time of the murder. The attorney decided not to call the manager because the manager was not certain that he observed petitioner on the night of the murder. Nugent was more positive and was called to testify at the trial. The state had very strong evidence which placed petitioner at the murder scene and Nugent's testimony was evidently not believed.
Petitioner claims that Attorney Castignoli was deficient in that he failed to call as alibi witnesses Regina Rhodes and Sergeant Granucci.
At the murder trial, petitioner testified that he telephoned to Regina Rhodes, his wife, from one of the bars at about the time of the murder. His wife was not called as a witness at the trial. It is claimed that the failure to call Regina Rhodes in support of the alibi was important because the state argued to the jury that petitioner's wife was not supporting him in this claim of innocence. Investigator Gagne interviewed Regina Rhodes and obtained a written statement from her. In her statement to Gagne, Mrs. Rhodes stated that she called and spoke to petitioner on the night of the murder. The written statement contains at least two admitted falsehoods. Mrs. Rhodes also gave statements to the police. All CT Page 13706 of these statements contain inconsistencies. Attorney Castignoli had reviewed all of these statements. The attorney elected not to call Mrs. Rhodes as an alibi witness. Although her credibility could have been impeached at trial because of the inaccuracies in her statements the primary reasons for Attorney Castignoli not calling Mrs. Rhodes was that he did not consider her an alibi witness because she could not testify that she was with petitioner at the time the crime was committed. Although she could corroborate petitioner's claim that a call was made, she could not testify where the petitioner was at the time of the call. The attorney made this tactical decision. He made this tactical decision based upon his prior experience representing criminal defendants. Judicial scrutiny of an attorney's tactical decisions must be highly deferential. The election not to call Regina Rhodes as an alibi witness could reasonably be considered sound trial strategy. Johnson v.Commissioner of Correction, 222 Conn. 87, 97-98 (1992).
Petitioner also claimed that Attorney Castignoli was deficient in not calling Sergeant Granucci of the New Haven Police Department to testify as an alibi witness. Petitioner testified at the habeas trial that Sergeant Granucci, known to him as Art the Cop, saw him in New Haven at about the time of the murder. The evidence confirms that in June of 1995, Sergeant Granucci performed an extra duty assignment in full uniform at Silhouette's, one of the New Haven bars involved in the alibi defense, performing crowd control and maintaining the peace. Sergeant Granucci testified that from his duty as a police officer and his service at Silhouette's, he knew petitioner and recognized him in court. He also testified that petitioner was a regular at Silhouette's bar. The officer further testified that no one contacted him concerning giving testimony at the criminal trial. There was also testimony that he was in the New Haven area and available to be interviewed at all times. The police officer was aware of petitioner's arrest and subsequent trial for murder. At the habeas proceedings, Sergeant Granucci testified that he had no information which would be of assistance to any party to the trial. He could not say that he saw petitioner in New Haven at the time of the murder so as to support the alibi defense. He further testified that if he had any information which he thought would be of any value to either the police or defense counsel he would have come "forth and reported at the time. Under the circumstances it cannot be found that Attorney Castignoli was in any was deficient in not calling Sergeant Granucci as a witness in support of petitioner's alibi defense. There is nothing to indicate that the result of the criminal prosecution would have been different if he had been called to testify.
At the habeas trial, petitioner called as a witness Christine Zampano. Ms. Zampano testified that she was tending bar at Silhouette's on the night of the murder and that she was not interviewed by any investigator CT Page 13707 although she was available for such interview. She testified that she knew petitioner and was friendly with Regina Rhodes, his wife. Her testimony was that Regina Rhodes called her on the night of the murder looking for petitioner. She could not recall the time the call was received. She testified that she informed Ms. Rhodes that she did not know where petitioner was at the time. Ms. Zampano testified that her recollection of the events on the night of July 29, 1995 would have been better if she had been interviewed at the time. Ms. Zampano also testified that if she had relevant information at the time she might not have reported it to the police, but she at least would have informed Regina Rhodes.
From her testimony it must be concluded that she had no information which could be used in support of petitioner's alibi defense. She appeared to be positive in her testimony that she was tending bar on the night of the murder and that she did not see petitioner. Attorney Castignoli's failure to have Ms. Zampano interviewed or called as a witness does not appear to have effected the outcome of the criminal trial.
Petitioner also claims that Attorney Castignoli was deficient in his cross examination of Kenneth Vitale. Mr. Vitale testified for the state at the criminal trial. It is claimed that Attorney Castignoli failed to properly raise the issue that Vitale might have had a motive in testifying for the state because of the marijuana in his apartment. The trial transcript, however, indicates that Attorney Castignoli did develop this issue. He brought out the presence of the marijuana and that it was displayed in front of Vitale's children. The attorney then asked Vitale if he had ever been charged with any crime by the police, if he was afraid of being charged and if he had hired a lawyer. It is claimed also that Attorney Castignoli's cross examination of Vitale failed to bring out discrepancies between his original statement to the police and his subsequent testimony that petitioner carried the pistol when he left the bedroom after the murder. A review of the transcript, however, indicates that this question was developed in the cross examination of Vitale.
Although it is possible that Attorney Castignoli's cross examination of Mr. Vitale could have been more effective. This has not been demonstrated. Upon review, it cannot be found that Attorney Castignoli's cross examination of Mr. Vitale fell below the required standard of reasonable competence displayed by lawyers of ordinary training and skill in the criminal law. Mercer v. Commissioner of Corrections, supra,51 Conn. App. 641 (1999).
Petitioner whose credibility is found to be questionable, testified at the habeas trial that Attorney Castignoli did not adequately prepare him CT Page 13708 for trial. The credible evidence, however, is to the contrary. Attorney Castignoli met with petitioner at least ten times to update him on the progress of the case. he met with petitioner for over an hour on the Sunday just prior to the trial to go over his testimony. From the evidence it must be found that Attorney Castignoli was not deficient in his preparation of the petitioner to testify on his own behalf at trial.
There was evidence at the habeas trial that petitioner's relative Travis Perry closely resembled petitioner and owned a gold escort automobile at the time of the murder. There was testimony at the murder trial to the effect that the police had been informed that petitioner was driving a gold escort at the time of the killing. It is claimed that Attorney Castignoli was deficient in not pursuing a claim that Travis Perry was the killer and a mistaken identification had been made. No evidence, however, had been presented that would bring the misidentification claim out of the realm of speculation.
Upon review of the evidence presented and the issues before the court, it must be found that petitioner failed to establish that in representing him Attorney Castignoli was deficient in the performance of his duties as alleged or that petitioner suffered any prejudice as a result of Attorney Castignoli representation. All evidence indicates that petitioner received a fair trial. Accordingly, the petition for a writ of habeas corpus is denied.
Joseph J. Purtill, Judge Trial Referee