## ANDRE RHODES *v.* COMMISSIONER OF CORRECTION
## (AC 22467)

Lavery, C. J., and Dranginis and Bishop, Js.

Submitted on briefs September 16—officially released November 19, 2002

*Sebastian O. DeSantis*, special public defender, filed a brief for the appellant (petitioner).

*Mary M. Galvin*, state's attorney, and *James M. Ralls* and *Angela R. Macchiarulo*, assistant state's attorneys, filed a brief for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Andre Rhodes, appeals from the habeas court's denial of his amended petition

for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly concluded that he failed to prove his claim of ineffective assistance of counsel. We dismiss the appeal.

In affirming the petitioner's conviction on direct appeal, our Supreme Court stated in *State* v. *Rhodes*, 248 Conn. 39, 726 A.2d 513 (1999), that the jury could have reasonably found the following facts. "On the evening of July 29, 1995, the [petitioner] and an unidentified male companion went to Kenneth Vitale's apartment to purchase one-quarter pound of marijuana from Vitale's friend, Michael Day, the victim. Vitale's girlfriend, Megan Schwatlow, and Carolyn Huhn were present at the apartment. When the victim arrived with the marijuana, Vitale, the victim, the [petitioner] and the unidentified male convened in the bedroom to weigh the drugs. Thereafter, it was determined that the marijuana weighed five grams less than expected. The victim then attempted to place a telephone call to the person from whom he had obtained the marijuana. While the victim was on the telephone, Vitale departed from the bedroom and, as he was proceeding toward the living room, he heard the sound of a gunshot. Seconds later, the unidentified male left the bedroom and proceeded into the living room carrying a brown paper bag containing the marijuana. The [petitioner] followed immediately thereafter, brandishing a pistol and pointing it in the direction of Vitale, Schwatlow and Huhn. The [petitioner] and the unidentified male fled the apartment. Vitale then went into the bedroom and observed the victim lying on the bed, semiconscious, with the telephone receiver in his hand. According to the medical examiner, the victim had been shot twice in the chest from a distance of less than two feet. The victim died from injuries sustained as a result of the gunshot wounds.

"Vitale reported the incident to the police and provided them with the [petitioner's] name and address.

The police located the [petitioner] two days later at the apartment of a friend, Leon Telford. The police conducted a search of Telford's home and found a red, nylon zippered bag, containing a semiautomatic pistol, two bags of marijuana and a bag of hashish. Ballistics testing definitively matched the pistol to two spent bullets that had been found near the victim's body and the [petitioner's] fingerprint was found on two of the bags containing the drugs. In addition, Vitale and Schwatlow made positive out-of-court and in-court identifications of the [petitioner]. Both Vitale and Schwatlow described the [petitioner's] pistol to the police and later identified it at trial. Huhn also made a positive in-court identification of the [petitioner].

"After six days of deliberations, the jury found the [petitioner] guilty of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8, and felony murder in violation of General Statutes § 53a-54c." *State* v. *Rhodes*, supra, 248 Conn. 40–42.[1]

On September 20, 1999, the petitioner filed a petition for a writ of habeas corpus, claiming that the evidence was insufficient to support the verdict and that the trial court improperly allowed the state to exercise a peremptory challenge on the basis of race. On April 17, 2001, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel. An evidentiary hearing took place, and on October 2, 2001, the court rendered judgment dismissing the petition. On October 5, 2001, the court denied the petitioner's petition for certification to appeal. This appeal followed.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate

---

[1] The petitioner appealed from his conviction following the jury trial. The sole issue on appeal involved a juror's allegedly improper conduct with a nonjuror during the trial. Our Supreme Court upheld the conviction in *State* v. *Rhodes*, supra, 248 Conn. 39.

review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court . . . . First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Citations omitted; internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 68 Conn. App. 484, 487, 791 A.2d 697, cert. denied, 260 Conn. 909, 795 A.2d 544 (2002).

"The standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner must prove both deficient performance and actual prejudice. . . . Therefore, for the petitioner to prevail on his claim of ineffective assistance of counsel, he must establish both that his counsel's performance was deficient and that there is a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different." (Citation omitted, internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, supra, 68 Conn. App. 486.

The petitioner claimed that his counsel failed to call potential alibi witnesses to testify as to his whereabouts at the time he allegedly killed the victim.[2] The petitioner

---

[2] The petitioner also claims that his counsel failed to cross-examine Vitale effectively concerning discrepancies between Vitale's statement to police and his subsequent testimony. A review of the transcript reveals that counsel did, in fact, question Vitale concerning those discrepancies.

claimed that he had been in two bars in New Haven at the time the victim was murdered. The potential alibi witnesses testified at the habeas trial that they had been present at the New Haven bars during the night in question, but they could not testify that they had seen the petitioner at the time of the murder so as to support his alibi defense. The potential witnesses also testified at the habeas trial that they had been aware of the petitioner's arrest and that if they had had any information that would have been pertinent to the police or to defense counsel, they would have come forth and reported such information.[3]

The petitioner also claims that his counsel failed to call Regina Rhodes, the petitioner's wife, to corroborate his statement that he was not present at the murder scene. The petitioner's counsel made a tactical decision not to call Regina Rhodes to testify during the trial because she would not be able to testify as to where the petitioner was when he made a telephone call to her and, therefore, she would not significantly assist the petitioner's alibi defense. In addition, Regina Rhodes' written statements to the police were inconsistent with the statement that she had given to the investigator hired by the petitioner's counsel. Those inconsistencies could have been used to impeach her credibility.

The petitioner has failed to demonstrate deficient performance by his counsel. See id. Our thorough review of the record leads us to conclude that the petitioner has failed to demonstrate that the court abused its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

---

[3] One of the potential witnesses was a member of the New Haven police department who was working extra duty in full uniform on the night of the murder at one of the bars that the petitioner frequented.