JERMAINE YOUNG *v.* COMMISSIONER OF CORRECTION
(AC 26257)

Flynn, C. J., and Harper and Pellegrino, Js.

---

Argued February 10—officially released June 20, 2006

*Katherine C. Essington*, special public defender, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, Jermaine Young, appeals from the judgment of the habeas court dismissing his

petition for a writ of habeas corpus. He had been sentenced to a total effective term of fifty years incarceration after the jury found him guilty of the crimes of murder and conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48, respectively. This court affirmed his conviction in *State* v. *Young*, 68 Conn. App. 10, 791 A.2d 581, cert. denied, 260 Conn. 909, 795 A.2d 547 (2002). His habeas appeal is based on two grounds. In the petitioner's first claim, he challenges the court's refusal at the habeas trial to permit habeas counsel to subpoena a former juror who had deliberated and joined in the verdict finding him guilty. His second claim attacks a finding that a conversation between that same juror and a coworker occurred after her service had ended. We affirm the judgment of the habeas court and consider each of the petitioner's claims in turn in light of well established review standards.

The following facts are relevant to our resolution of the petitioner's appeal. After a jury trial, the petitioner was convicted on October 27, 1999. An alleged juror misconduct issue was raised before the habeas court in the petitioner's amended petition for a writ of habeas corpus filed August 4, 2003, when the petitioner pleaded that during the course of the criminal trial, before deliberations had commenced, a member of the jury had engaged in misconduct by speaking with an individual concerning the evidence in the case. The petitioner further pleaded that the juror asked the other individual to pray with her "because the juror said they were going to find the [petitioner] guilty." Subsequently, in November, 2003, the respondent, the commissioner of correction, filed a request for a more specific statement, asking the petitioner to specify the name of the juror and of the other person who was involved. The petitioner's habeas counsel advised the respondent that the juror

was named N,[1] and Ramona Avent was named as the other person.

The respondent moved for a preliminary hearing and supervisory order requesting that the court conduct a preliminary hearing and issue supervisory orders before any juror would be called to testify. The court, on October 28, 2004, held a preliminary hearing at the respondent's request to deal with the procedure to be followed during the habeas trial. At that hearing, the petitioner's habeas counsel informed the court that the petitioner had learned of N's conversation with Avent from a fellow prison inmate who also knew Avent. At this preliminary hearing, the petitioner's habeas counsel agreed not to subpoena N until the court made a decision as to how the petitioner's counsel was to proceed. The court made no ruling at the preliminary hearing regarding whether the petitioner could subpoena N, but indicated that it believed that the proper starting place for the hearing on the habeas petition was with the petitioner's fellow inmate and Avent.

The court held a second hearing on January 13, 2005, to determine whether there was cause to explore further the allegation of juror misconduct. At this hearing, the court heard testimony from Avent. The petitioner did not call his fellow inmate to testify. The court dismissed the habeas petition from the bench stating that it had heard testimony from Avent, who did not remember the conversation with N or whether it was jury duty or the jury experience that prompted the suggestion to pray. The court determined that there was hardly a suggestion of juror misconduct, particularly since the case had finished at the time the conversation took place. Certification to appeal was granted. This appeal followed.

---

[1] We refer to the juror by her initial to protect her legitimate privacy interests. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

I

The petitioner first claims that the court improperly refused to permit habeas counsel to subpoena a former juror. We disagree.

We begin by setting forth our standard of review. Our role on appeal is limited to a "consideration of whether the trial court's review of an alleged juror misconduct can fairly be described as an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Roman*, 262 Conn. 718, 727, 817 A.2d 100 (2003).

Jurors are not permitted to discuss the case with persons who are not on the panel on which they sit prior to the rendition of their verdict and its acceptance by the court. *State* v. *Rhodes*, 248 Conn. 39, 46–47, 726 A.2d 513 (1999). Setting out the petit juror's oath, General Statutes § 1-25 provides, inter alia, "You solemnly swear or solemnly and sincerely affirm, as the case may be . . . that you will not speak to anyone else, or allow anyone else to speak to you, about this case until you have been discharged by the court; and that when you reach a decision, you will not disclose the decision until it is announced in court; so help you God or upon penalty of perjury." General Statutes § 1-25. A defendant bears the burden of showing actual prejudice stemming from any such claimed violation of the prohibition against such improper juror discussions or disclosures in which the trial judge's role was not invoked. *State* v. *Rhodes*, supra, 47.

"To ensure that the jury will decide the case free from external influences that might interfere with the exercise of deliberate and unbiased judgment . . . a trial court is required to conduct a preliminary inquiry, on the record, whenever it is presented with information tending to indicate the possibility of juror misconduct or partiality." (Internal quotation marks omitted.) *State* v. *Roman*, supra, 262 Conn. 726. This standard is

instructive in habeas appeals as well because it is derived from the law of "procedural due process . . . ." (Internal quotation marks omitted.) *State* v. *Brown*, 235 Conn. 502, 529–30, 668 A.2d 1288 (1995). Our Supreme Court has identified four considerations that guide the inquiry: (1) the right of an accused to an impartial jury free of improper influence; (2) the risk of deprivation of that right; (3) the state's interest in finality of judgments; and (4) protecting jury privacy, the integrity of its deliberations and maintenance of public confidence in the jury system. Id., 529–31.

The "form and scope" of the inquiry by the court is left to the sound discretion of the court. Id., 529. In light of the state's strong interest in preventing juror harassment, juror testimony has been deemed unnecessary when the evidence presented of claimed misconduct was highly speculative. *State* v. *Dorans*, 261 Conn. 730, 748–53, 806 A.2d 1033 (2002), overruled in part on other grounds by *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 316–17, 852 A.2d 703 (2004).

The alleged juror misconduct was never brought to the trial court's attention within the three year statute of limitations for a new trial, as provided by General Statutes § 52-582.[2] In this case, the petitioner was found guilty of murder and conspiracy to commit murder on October 27, 1999, and sentenced to fifty years imprisonment on December 23, 1999. More than three years later, the petitioner, on August 4, 2003, filed his amended petition for a writ of habeas corpus, requesting a new trial on the ground of newly discovered evidence.

Additionally, nothing in the record of the testimony of Avent, the juror's coworker, references any discus-

---

[2] General Statutes § 52-582 provides in relevant part: "No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of . . . ."

sion of the facts in the petitioner's case, the content of jury deliberations, any tentative vote taken by the panel or its tentative verdict. In short, nothing in Avent's testimony indicates that N provided any "pipeline" into the jury's activities during deliberations. We find nothing in the habeas evidentiary record to indicate that N violated her oath.

No evidence was adduced from court staff at the petitioner's jury trial as to the schedule the court followed, or from the juror's employer regarding what days and times she was at work in relation to that court schedule. As the habeas court observed, the facts of when the verdict was returned and when N came back to work easily could have been ascertained without calling N to testify. That other evidence from court personnel and N's employment attendance records was not produced. Instead, we are asked to speculate and to conclude on appeal that N's testimony was necessary more than three years later because her prayer session occurred before the verdict in the case was returned. There was no compelling need for N's testimony. We therefore conclude that the evidence that the petitioner claimed should have warranted the court to grant him permission to subpoena N was of the highly speculative kind that our Supreme Court in *State* v. *Dorans*, supra, 261 Conn. 753, deemed insufficient to require juror testimony. We therefore further conclude that the court did not abuse its wide discretion to determine the scope of its inquiry on the claim of juror misconduct; see *State* v. *Brown*, supra, 235 Conn. 531; and properly denied the petitioner's request to subpoena the juror to testify at the habeas trial.

## II

We next turn to the petitioner's claim that the court improperly found that the conversation between N and her coworker, Avent, occurred after her service on the jury had ended. We disagree.

We first set forth the standard of review. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985).

The petitioner claims that the finding was clearly erroneous because Avent's testimony was inconsistent and, therefore, was an insufficient foundation for such a factual finding. Avent testified on direct examination that N "was a little uneasy about . . . coming off the case" and testified that she did not express what the uneasiness was but sensed that N was "uncomfortable." She further testified that she did not "pry" and did not recall any statement made by N that she was going to find the petitioner guilty. The petitioner, therefore, did not establish any violation of the juror's oath or harm from any conversation that occurred. The court found that Avent came across as a very intelligent, straightforward, candid person and found that nothing ever was said between N and Avent that the jury was "going to find him guilty." However, the petitioner contends that Avent's testimony was inconsistent in that she testified that N had told her that she was back from jury duty at the time the conversation occurred, but later, still on direct examination, testified that she "didn't know" whether N had come back to work permanently or whether she had not yet completed jury duty at the time of the conversation.

What this argument ignores is the fact finder's primary role in determining what evidence to believe and to disbelieve and the axiom that the reviewing court must look at the whole record. Avent agreed on cross-examination by the prosecutor that the conversation between her and N had occurred after N had finished jury service. On direct examination, Avent indicated

that N could have come back to work after having been on vacation. The court was entitled to credit the portion of Avent's testimony indicating that N's service was complete at the time they prayed. Viewing the entire evidence before us, we are not convinced that a mistake has been committed. Furthermore, the petitioner did not establish through the one witness called at the habeas trial that any improper disclosures were made by the juror to Avent and, therefore, he has suffered no harm.

The judgment is affirmed.

In this opinion the other judges concurred.